IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIDDLESEX WATER COMPANY,** | : | CIVIL ACTION NO. 3:21-CV-1981 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA PUBLIC UTILITY COMMISSION,** | : | |
| | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| **AQUA PENNSYLVANIA, INC.,** | : | |
| | : | |
| Intervenor-Defendant | : | |

## **MEMORANDUM**

Plaintiff Middlesex Water Company ("Middlesex") filed a complaint against the Pennsylvania Public Utility Commission ("PUC") seeking declaratory and injunctive relief for alleged constitutional violations. Middlesex has filed an emergency motion for preliminary injunction, alleging a November 2021 PUC order violates its constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as the Dormant Commerce Clause. The PUC and intervenor-defendant Aqua Pennsylvania, Inc. ("Aqua"), have filed briefs in opposition, which we have construed as motions to dismiss.

I.  **Factual Background & Procedural History**[1]

Middlesex is incorporated in, and has its principal place of business in, New Jersey. (See Doc. 1 ¶ 15). It is registered as a public utility in New Jersey and operates utility systems in both New Jersey and Delaware. (See id. ¶¶ 1, 2). The parties dispute whether Middlesex is also operating a utility system in the Commonwealth of Pennsylvania. Middlesex is the parent company of its wholly owned subsidiary, Twin Lakes Utilities, Inc. ("Twin Lakes"). (See id. ¶ 22). Twin Lakes is a Pennsylvania corporation and has provided services as a public water utility to roughly 115 customers of the Twin Lakes water system ("the system") in the Commonwealth of Pennsylvania since 2009. (See id. ¶¶ 27, 29). The crux of this matter centers on whether the PUC erred in concluding it can assert jurisdiction over Middlesex and assess an escrow requirement on Middlesex as a condition of the sale of Twin Lakes. (See Docs. 1-1, 1-2).

In early 2008, Middlesex and the system's previous owner, Twin Lakes Water Services, LLC ("the LLC"), jointly submitted a request for a certificate of public convenience ("CPC") to the PUC. (See id. ¶ 20). A few months later, these same entities filed a joint application with the PUC for Middlesex to acquire the LLC's assets. (See id. ¶ 21). The PUC approved the acquisition in 2009, but it never issued a "fully executed or valid CPC to Middlesex." (See id. ¶¶ 23, 24). Shortly after the

---

[1] The court convened a preliminary injunction hearing and oral argument on December 10, 2021. The court reporter has provided the court with a rough transcript of the December 10 hearing. Citations thereto are abbreviated "12/10/21 Tr. __." Pagination of the rough draft may vary from pagination of the official transcript.

PUC approved the acquisition, Middlesex formed its wholly owned subsidiary, Twin Lakes. (See id. ¶ 25). Twin Lakes then entered an asset purchase agreement with the LLC, and Twin Lakes began operating the system in November 2009. (See id. ¶¶ 28-30). Twin Lakes has a single employee, and all its officers and directors are also officers or directors of Middlesex. (See 12/10/21 Hr'g Tr. 20:17-21:13).

During Twin Lakes' ownership of the system, two overarching themes emerged: first, Twin Lakes received extensive financial assistance from Middlesex, including three unsecured revolving promissory notes, to operate the system. (See id. ¶¶ 34, 35, 38, 39). Second, the system was plagued by the need for infrastructure repairs and other costly improvements. (See id. ¶¶ 30, 41-51, 55, 59). These problems led to several base rate cases before the PUC wherein Twin Lakes sought to increase utility rates and provide more reliable service. (See id. ¶ 42).

On May 28, 2020, after years of adverse financial performance and Twin Lakes' failure to repay all or a portion of its indebtedness, Middlesex demanded immediate payment of the outstanding amounts due on its promissory notes to Twin Lakes, and ceased its financial support. (See id. ¶¶ 74, 76). Twin Lakes responded the next day that it could not meet the payment demand. (See id. ¶ 75). Three days after receiving Twin Lakes' response, Middlesex terminated the parties' service agreement. (See id. ¶ 78). In essence, this was a carefully choreographed dance between parent and subsidiary over the parent's support, thereby setting the stage for Twin Lakes' invocation of Section 529 of the Utility Code. By way of illustration, A. Bruce O'Connor, the Middlesex Senior Vice President, Treasurer, and Chief Financial Officer who signed the demand letter, is also the Vice President

and Treasurer of Twin Lakes. (See 12/10/21 Hr'g Tr. 5:22-6:14, 37:13-39:9). Robert K. Fullagar, the Twin Lakes President who signed the response, is also an officer of Middlesex. (See id. at 38:22-39:3). Jay L. Cooper, Middlesex General Counsel who was copied on all the correspondence, also serves as general counsel to Twin Lakes. (See id. at 21:5-7). All of the correspondence is sent to and from the same corporate office in New Jersey. (See id. at 38:14-21).

Less than ten days after Middlesex terminated the service agreement, Twin Lakes requested that the PUC convene a proceeding under Section 529, and filed a formal petition a few weeks later. (See Doc. 1 ¶¶ 79-80, 82-83). According to Section 529(a):

> The commission may order a capable public utility to acquire a small water or sewer utility if the commission, after notice and an opportunity to be heard, determines:
>
> (1) that the small water or sewer utility is in violation of statutory or regulatory standards . . . which affect the safety, adequacy, efficiency[,] or reasonableness of the service provided by the small water or sewer utility;
> (2) that the small water or sewer utility has failed to comply, within a reasonable period of time, with any order of the Department of Environmental [Protection] or the commission concerning the safety, adequacy, efficiency[,] or reasonableness of service . . . ;
> (3) that the small water or sewer utility cannot reasonably be expected to furnish and maintain adequate, efficient, safe[,] and reasonable service and facilities in the future;
> (4) that alternatives to acquisition have been considered . . . and have been determined by the commission to be impractical or not economically feasible;
> (5) that the acquiring capable public utility is financially, managerially[,] and technically capable of acquiring and operating the small water or sewer utility in compliance with applicable statutory and regulatory standards; and

> (6) that the rates charged by the acquiring capable public utility to its preacquisition customers will not increase unreasonably because of the acquisition.

66 PA. CONS. STAT. § 529(a). This section further requires the PUC to consider alternatives to acquisition, to analyze particular factors of the small water utility, and to provide notice to certain governmental and private parties about the proceeding. See id. § 529(b), (c), (h). Section 529 permits the PUC to, *inter alia*, appoint a receiver of the small water utility, and determine whether a particular purchase price of the small water utility is reasonable. See id. § 529(e), (g).

    The PUC instituted a Section 529 investigation regarding Twin Lakes in September 2020. (See Doc. 1 ¶ 89). It later appointed public utility Aqua to act as receiver of the system during the Section 529 proceedings, and referred the matter to an Administrative Law Judge ("ALJ"). (See id. ¶¶ 89, 97). Following evidentiary hearings and additional briefing, the ALJ issued a recommended decision in April 2021. (See id. ¶¶ 96, 98; see also Doc. 1-2; Doc. 30 ¶ 5). The decision details over 100 factual findings and contains 23 conclusions of law. (See Doc. 1-1 at 20). It analyzes the Section 529 criteria, discusses additional issues specific to the petition, and recommends that the Section 529 petition be granted, and that Twin Lakes be acquired by Aqua. (See generally Doc. 1-2). Pertinent to the instant matter, it further recommends that the grant be "subject to the condition that within thirty (30) days after the PUC's final action in this proceeding Middlesex Water Company places in escrow $1,675,000 to be used to offset the costs of replacing and remediating the existing infrastructure of the Twin Lakes system." (See id. at 70). Twin Lakes and Aqua both filed exceptions to the ALJ's decision, with Twin Lakes

contending that the PUC's exercise of jurisdiction over Middlesex was improper and that the escrow requirement was unconstitutional. (See Doc. 1 ¶ 110; Doc. 1-1 at 24-36).

On November 18, 2021, the PUC adopted the ALJ's decision with modifications, but importantly, it retained the escrow requirement for Middlesex, concluding that "Twin Lakes and Middlesex are one in the same" under an alter ego theory. (See Doc. 1 ¶¶ 111-116; Doc. 1-1). Twin Lakes is now seeking relief from the PUC's opinion and order in the Commonwealth Court of Pennsylvania, and Aqua has cross appealed. (See Doc. 36 at 22; Doc. 37 at 23-24). Twin Lakes, Aqua, and the PUC have fully briefed Twin Lakes' emergency application for a partial stay before the Commonwealth Court, and oral argument is scheduled for next week. (See Doc. 36 at 22; Doc. 41).

Middlesex commenced this action with the filing of a verified complaint the day after the PUC issued its opinion and order. It asserts that the PUC's order violates Middlesex's constitutional rights pursuant to 42 U.S.C. § 1983. It seeks declaratory and injunctive relief regarding these rights. Ten days after filing suit, Middlesex moved on an emergency basis for a preliminary injunction. We promptly held a scheduling conference with all parties, including Aqua, which intervened as a defendant the following week. The court convened a preliminary injunction

hearing and oral argument on December 10, 2021, and the parties have filed supplemental briefing as ordered by the court.[2]

## II. Legal Standard[3]

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605

---

[2] To expedite the court's consideration of the defendants' abstention arguments, the parties agreed during the December 10 hearing that the opposition briefs filed by PUC and Aqua should be construed as motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  (See 12/10/21 Hr'g Tr. 51:16-54:17; see also FED. R. CIV. P. 12(b).

[3] The parties' expedited supplemental briefs do not invoke a particular subsubsection of Rule 12(b).  (See Docs. 44, 45, 47).  We are mindful that "abstention is a judicially created doctrine," see Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004), and it "does not present a jurisdictional issue," see Winston ex rel. Winston v. Child. & Youth Servs., 948 F.2d 1380, 1384 (3d Cir. 1991).  We will therefore treat the construed motions as arising under Rule 12(b)(6) rather than Rule 12(b)(1).

7

F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

**III.   Discussion**

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 821 (1976).  But this obligation is not absolute, and in certain exceptional cases, a court may abstain from exercising its jurisdiction, even though

such jurisdiction is properly conferred. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Abstention represents "a complex of consideration[s] designed to soften the tensions inherent in a system that contemplates parallel judicial processes." See Chiropractic Am. v. Lavecchia, 180 F.3d 99, 103 (3d Cir. 1999) (quoting Pennzoil Co. v Texaco, Inc., 481 U.S. 1, 11 n.9 (1987)). In other words, abstention often represents a respect for comity, "or the idea that certain matters are of state concern to the point where federal courts should hesitate to intrude." Id. (internal quotation marks and citation omitted).

Burford abstention derives its name from its Supreme Court case of origin. See Burford v. Sun Oil Co., 319 U.S. 315 (1943). In Burford, Sun Oil Company sued to enjoin enforcement of a drilling permit issued by the Railroad Commission of Texas, arguing the permit violated state law and deprived Sun Oil of due process. See Burford, 319 U.S. at 317. The Court observed that Texas had developed an "expeditious and adequate" method to judicially review the Railroad Commission's decisions at the state level. Id. at 333-34. It noted that the issues presented by Sun Oil's lawsuit "so clearly involve[] basic problems of [state] policy that equitable discretion should be exercised to give the [state] courts the first opportunity to consider them," and ordered reinstatement of the district court's dismissal. Id. at 332, 334.

Eight years later, the Court reinforced this abstention principle when a railroad sued the Alabama Public Service Commission to enjoin its order denying a petition to discontinue service. See Ala. Pub. Serv. Comm'n v. S. Ry. Co., 341 U.S. 341, 343 (1951). The railroad alleged the order "amounted to a confiscation of its

9

property in violation of the Due Process Clause of the Fourteenth Amendment." Id. at 343. Citing Burford, the Court again observed the state courts provided adequate relief, and held that "jurisdiction should not be exercised in this case as a matter of sound equitable discretion." Id. at 350.

More recently, the Supreme Court summarized the Burford doctrine thusly:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350, 361 (1989) (quoting Colo. River, 424 U.S. at 814). Our court of appeals has articulated a two-step analysis for Burford abstention. See Lavecchia, 180 F.3d at 104. First, a district court must consider whether "timely and adequate state-court review is available." Id. Only if the court answers this threshold determination in the affirmative should it examine the second prong contemplated by the enumerated NOPSI factors. See Lavecchia, 180 F.3d at 105 (internal quotation marks omitted); see also id. at 108 (Burford abstention warranted when plaintiffs claimed state agencies "overstepped their lawful authority in dealing with a substantial and complex local concern"). Abstention may be warranted even if one of the NOPSI factors is lacking. See Lac D'Amiante du Quebec, Ltee v. Am. Home Assurance Co., 864 F.2d 1033, 1043 (3d Cir. 1988).

### A. Timeliness and Adequacy of State-Court Review

In reviewing the timeliness and adequacy of state-court review, we "focus on whether the state courts have jurisdiction over the plaintiffs' claims, not on whether the state court was likely to decide the merits of their case." See Phila. City Council v. Schweiker, 40 F. App'x 672, 679 n.5 (3d Cir. 2002) (nonprecedential) (citing Riley v. Simmons, 45 F.3d 764, 773 (3d Cir. 1995); Univ. of Md. at Balt. v. Peat Marwick Main & Co., 923 F.2d 265, 274-75 (3d Cir. 1991)). Abstention may be particularly warranted when it enables a state court to issue a state law decision, thereby avoiding an unnecessary constitutional decision by the federal court. See Lavecchia, 180 F.3d at 103-04 (quoting Burford, 319 U.S. at 333 n.29 (citing Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 173 (1942))).

In the matter *sub judice*, adequate and timely state court review is not only available, it is pending. With few exceptions, Pennsylvania law vests the Commonwealth Court with "exclusive jurisdiction of appeals from final orders of government agencies," including appeals from the PUC. See 42 Pa. Cons. Stat. § 763(a)(1). The Commonwealth Court's scope of review over decisions by the PUC determines "whether constitutional rights were violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence." See Phila. Gas Works v. Pa. Pub. Util. Comm'n, 249 A.3d 963, 966 n.3 (Pa. 2021) (citation omitted).

Following the PUC's November 2021 opinion and order in the Section 529 proceeding, Twin Lakes timely filed a petition for review to the Commonwealth Court, and later applied on an emergency basis for a partial stay of the escrow

11

requirement during the appeal.  (See Doc. 37 at 12-13; Doc. 39-10; Doc. 39-13).  Aqua also filed a cross-appeal of the PUC's decision.  (See Doc. 37 at 12-13).  Last week, the Commonwealth Court ordered expedited briefing on Twin Lakes' petition for an emergency stay, and the application was fully briefed on December 10.  (See Doc. 37 at 23-24).  On Monday of this week, the Commonwealth Court scheduled oral argument on Twin Lakes' stay petition for December 21.  (See Doc. 41 at 1, 2).  Hence, timely and adequate state-court review is well underway.  If we decide to abstain in the instant matter, the Commonwealth Court will determine whether PUC overstepped its authority by conditioning the Section 529 approval on the Middlesex escrow requirement.  Hence, our abstention will present Pennsylvania courts with the "opportunity to determine questions of state law which may prevent the necessity of decision on a constitutional question."  See Lavecchia, 180 F.3d at 103-04 (quoting Burford, 319 U.S. at 333 n.29).[4]

### B.    NOPSI Factors

Having determined that adequate state law remedies are available, we turn to the NOPSI factors.  Matters implicating "substantial public concern" must involve suits filed against a party subjected to, protected by, or controlling the

---

[4] The Court in Burford listed a number of examples, noting: "Equity in its discretion may decline to aid a utility which seeks to prevent a public service commission from making an investigation which is at least arguably within its power."  See Burford, 319 U.S. at 333 (citing Petrol. Expl., Inc., v. Pub. Serv. Comm'n, 304 U.S. 209 (1938)).  Middlesex does not dispute that the PUC has authority to order the sale of Twin Lakes pursuant to Section 529—it merely disputes whether the PUC's authority includes the ability to order an escrow payment by Middlesex.  (See Doc. 5 ¶ 102; Doc. 36 at 25-32).

regulatory scheme at issue. See Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, 385 F. App'x 135, 144 (3d Cir. 2010) (nonprecedential) (citing Univ. of Md. at Balt., 923 F.2d at 273-74). Even when the case involves a state regulatory entity, however, abstention may not be warranted if the suit's underlying factual allegations are undisputed, or the relevant agency's administrative factual determinations are not contested. See USAA v. Muir, 792 F.2d 356, 365 (3d Cir. 1986) (Burford abstention not warranted for preemption claim brought by insurance company against state insurance commissioner); Balt. Bank for Cooperatives v. Farmers Cheese Co-op., 583 F.2d 104, 112 (3d Cir. 1978) (same when suit "entails no interference with" regulatory agency or state court). In addition to the enumerated NOPSI factors, we may also consider whether the case involves "the sort of complex, technical regulatory scheme to which the Burford abstention doctrine usually is applied." See Lavecchia, 180 F.3d at 105 (quoting Felmeister v. Off. of Att'y Ethics, 856 F.32d 529, 534 (3d Cir. 1988)).

We conclude that this case presents a classic example where federal interference would disrupt Pennsylvania's efforts to regulate small water utilities. Cf. NOPSI, 491 U.S. at 361. As the Court noted in NOPSI, utility regulation constitutes "one of the most important of the functions traditionally associated with the police power of the States." See NOPSI, 491 U.S. at 365 (citations and internal quotation marks omitted). The PUC, the administrative entity charged with regulating water utilities, controls the entire regulatory scheme. See Culinary Serv., 385 F. App'x at 144 (citation omitted).

The PUC is empowered by the legislature "to supervise and regulate all public utilities doing business within this Commonwealth" and to enforce its authority through orders over those utilities.  See 66 PA. CONS. STAT. § 501.  Section 529 of the Utility Code confers authority on the PUC to "order a capable public utility to acquire a small water or sewer utility" when certain conditions exist.  See id. § 529(a).  PUC has also buttressed this statutory authority—it "adopted a policy of fostering the acquisition of troubled systems by larger utilities as a means of correcting or preventing deficiencies in the acquired systems."  See Popowsky v. Pa. Pub. Util. Comm'n, 869 A.2d 1144, 1146 n.1 (Pa. Commw. Ct. 2005) (citing 52 PA. CODE § 69.711).

The Commonwealth Court's Popowsky decision constitutes the full extent of Pennsylvania court rulings on Section 529, and it relegates the discussion to a mere footnote explaining the PUC's statutory and regulatory authority to "coerce and encourage" acquisition of nonviable water and sewer utility services.  See Popowsky, 869 A.2d at 1146 n.1.  All other citations to the statute originate from PUC administrative opinions or secondary sources.  The court's independent research has not borne any federal-court construction of, or even passing citation to, Section 529.  Accordingly, the underlying Section 529 proceeding is clearly a matter which presents "difficult questions of state law" that directly challenge the extent of the PUC's statutory authority under Section 529.  See NOPSI, 491 U.S. at 361.

Moreover, the facts are not "simple and undisputed."  Cf. USAA, 792 F.2d at 365 (citation omitted); (see also Docs. 1-1, 1-2).  On the contrary, the ALJ's

14

numerous factual findings and recommendations on the PUC's personal jurisdiction over Middlesex, as well as the PUC's adoption of the ALJ's decision with modifications to include an "alter ego" finding, form the foundation of Middlesex's lawsuit. (See Doc. 1 ¶¶ 101-109, 111-118, 120; see also Docs. 1-1, 1-2). We also find that the instant litigation "predominantly affects local matters," *viz.*— small water utility regulation for 115 customers of Twin Lakes, and the "scope of authority and procedures of the state administrative agency" to direct who will own the system. See Allegheny Airlines, Inc. v. Pa. Pub. Util. Comm'n, 465 F.2d 237, 242 3d Cir. 1972) (Burford abstention warranted in suit where airline alleged PUC had no authority to order airline to reinstitute intrastate service).[5] Our

---

[5] We acknowledge but reject Middlesex's contention that Burford does not apply here because Middlesex is not "challenging . . . the PUC's regulatory scheme." (See Doc. 44 at 9-10). Middlesex's reliance on NOPSI is misplaced. The NOPSI Court noted that abstention was not warranted in part because the plaintiff brought a *preemption* claim, stating: "no inquiry beyond the four corners of the Council's retail rate order is needed to determine whether it is facially pre-empted by . . . the Federal Power Act." See NOPSI, 491 U.S. at 363. The Court contrasted its facts with those of the Alabama Public Service Commission case, where abstention was warranted, noting: "Unlike a claim that a *state agency has misapplied its lawful authority* or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" See NOPSI, 491 U.S. at 362 (quoting Ala. Pub. Serv. Comm'n, 341 U.S. at 347) (emphasis added). In contrast to the plaintiff in NOPSI, Middlesex is not bringing a preemption claim. (See Doc. 44 at 6). Here, Middlesex contends that the PUC "lacks authority to order Middlesex to do anything" and that the PUC's order therefore violates Middlesex's constitutional rights. (See Doc. 5 at 2). Middlesex's suit thus alleges that the PUC "misapplied its lawful authority" under Section 529, and failed to "properly weigh relevant state-law factors" in its opinion and order. Cf. NOPSI, 491 U.S. at 362. We consider this situation factually analogous to Burford and Alabama Public Service Commission, and in line with NOPSI's discussion of Burford's contours.

exercise of jurisdiction would interfere with the Commonwealth Court, which has a pending, emergency stay petition from Twin Lakes. Cf. Farmers Cheese Co-op., 583 F.2d at 112.

After careful consideration of the factors relevant to abstention under Burford and its progeny, the available state procedures, and the public policy implications of this decision for water utility regulation in the Commonwealth, we will abstain from hearing Middlesex's constitutional challenges to the PUC's November 2021 order.

### IV. Conclusion

We have construed—with the parties' consent—PUC's and Aqua's briefs in opposition as motions to dismiss Middlesex's complaint. We find that Burford abstention is warranted in this case. We will grant the PUC's and Aqua's motions as construed, dismiss Middlesex's complaint, and deny Middlesex's motion for preliminary injunction as moot. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   December 16, 2021